994 F.2d 460
 The TRAVELERS INSURANCE COMPANY, a Connecticut corporation, Appellee,
v.
WESTRIDGE MALL COMPANY, a Minnesota limited partnership, Appellant.
Unger Properties, a Minnesota limited partnership. (Two Cases)
 Nos. 92-2536, 92-2537.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 16, 1993.
Decided May 27, 1993.
 
 Jonathan M. Bye, Minneapolis, MN, argued (John H. Strothman and Ansis V. Viksnins, on the brief), for appellant.
 Patrick J. McLaughlin, Minneapolis, MN, argued (Scott A. Benson, on the brief), for appellee.
 Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HEANEY, Senior Circuit Judge.
 
 
 1
 This appeal addresses the proper application of the Minnesota law on mortgage foreclosure and assignment of rents to the foreclosure of the Westridge Mall in Fergus Falls, Minnesota, by Travelers Insurance Company. Travelers brought this action in United States District Court for the District of Minnesota under that court's diversity jurisdiction. Both parties moved for summary judgment, and the district court granted Travelers' motion. 826 F.Supp. 289. Westridge appeals, and we affirm, though in part for slightly different reasons than those of the district court.
 
 
 2
 * Westridge Mall was built in 1977 on property owned by Mrs. Eleanor I. Unger. The property had been leased to various farmers from 1950 until 1977. In 1975, Westridge's predecessor-in-interest entered into an option to lease thirty acres of the farm land from Mrs. Unger with the apparent intention of building the mall. The option was exercised on July 28, 1977.
 
 
 3
 Travelers' predecessor-in-interest received a mortgage on the property from Westridge's predecessor-in-interest on August 1, 1977. Included with the mortgage was an assignment of mall rentals. Construction of the Westridge Mall began on August 2, 1977, and the mall opened in October 1978. Both parties to this appeal acquired their present interests in 1979.
 
 
 4
 Westridge failed to make a monthly payment in 1990, and extensive workout negotiations between Travelers and Westridge ensued. When those negotiations failed, Travelers commenced this action, initially seeking a preliminary injunction to enforce its assignment of rents. The injunction was granted in February 1991, and all rents from the mall have been placed in a "lock box" account under Travelers' control from which ordinary operating expenses have been paid.
 
 II
 
 5
 Westridge raises two issues on appeal: first, that the assignment of rentals is invalid under Minnesota law; and second, that even if the assignment were valid, Travelers has failed to comply with the statutory notice provision and Westridge is therefore entitled to all rents that were collected until Travelers provided the tenants with proper notice. We take these arguments up in turn.
 
 
 6
 * Westridge attacks the assignment of rentals on two grounds: first, that the 1977 assignment is invalid because the underlying property was entirely agricultural at the time; and second, that even if the 1977 assignment were valid, it was superseded by an invalid assignment in 1979.
 
 
 7
 The first argument rests on the Minnesota statute governing assignment of rentals to a mortgagee: "A mortgagor may assign, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, if the mortgage: ... (3) Is not a lien upon property which was entirely homesteaded as agricultural property." Minn.Stat.Ann. § 559.17, subd. 2 (West 1988). The district court found that the property was not entirely agricultural on September 20, 1977--the date that it found the assignment to be effective[1]--and consequently found the assignment valid.
 
 
 8
 The district court apparently accepted Westridge's argument, which is not contested by Travelers, that the "as" in the statute should be read as an "or." Westridge rests this argument on the Minnesota legislature's 1992 amendment of the statute, which had last been amended in 1977. As amended, the statute precludes assignment of rentals "upon property which was entirely homesteaded, residential real estate containing four or less dwelling units where at least one of the units is homesteaded, or agricultural property." Minn.Stat.Ann. § 559.17, subd. 2(3) (West Supp.1993).
 
 
 9
 Despite the parties' willingness to read "homesteaded or agricultural" in lieu of "homesteaded as agricultural," we cannot acquiesce. We are bound to apply the statute as written. Grand Labs., Inc. v. Harris, 660 F.2d 1288, 1291 (8th Cir.1981) (en banc) ("It seems to us ... that judges should usually resist the temptation to superimpose their own ideas of reason and logic on the clear words of a [legislative] enactment."), cert. denied, 456 U.S. 927, 102 S.Ct. 1972, 72 L.Ed.2d 442 (1982). In doing so we find no evidence that the property was "homesteaded as agricultural" at the time of the 1977 assignment. Westridge conceded at oral argument that the property was not homesteaded at any point in 1977. We therefore affirm the district court's finding that the 1977 assignment is valid under section 559.17.
 
 
 10
 Westridge next argues that the 1977 assignment was superseded by the 1979 assignment which coincided with the transfer of the mortgage to Travelers from its predecessor-in-interest. There are three documents relevant to this argument: the 1977 assignment of rentals, the 1977 assignment of lease, and the 1979 assignment of leases. Westridge argues that the 1979 document supersedes both of the previous documents, while Travelers argues that the 1979 document simply supersedes the 1977 assignment of lease and not the assignment of rentals. Of the three documents, only the assignment of rentals contains a valid assignment of rentals under Minnesota law, so if the 1979 document supersedes the 1977 assignment of rentals, no valid assignment of rentals exists.
 
 
 11
 Westridge's argument fails on its face. Two separate documents were entered into on August 1, 1977: an assignment of lease and an assignment of rentals. The 1977 assignment of lease contains the following language: "Landlord hereby covenants and warrants to Mortgagee that Landlord has not executed any prior assignment of said Lease or rentals...." App. at 50. The 1979 assignment of leases contains identical language. App. at 44. Westridge relies on the "or rentals" language in the 1979 document as indicative of an intent to supersede the 1977 assignment of rentals. Travelers argues that the 1979 document supersedes only the 1977 assignment of lease, and we agree. The two documents are essentially identical, but for an up-to-date list of tenants in the 1979 document. The intent to supersede simply the earlier assignment of lease is clear on the face of the document, and no reasonable jury could find to the contrary.
 
 B
 
 12
 Westridge finally argues that even if the assignment is valid, Travelers has failed to comply with the notice provision in the Minnesota statute[2] and is therefore entitled to rents only from the date on which such notice was provided.[3] Travelers acknowledges its failure to comply with the statutory notice requirement but argues that its failure is due to Westridge's implied threat of suit were it to have notified the tenants of the default.
 
 
 13
 Following the failure of workout negotiations between the two parties, Travelers notified Westridge of its intent to enforce the assignment of rentals, which would require that it notify the tenants of Westridge's default. Westridge replied that the assignment was not enforceable, and added the following warning: "Incidentally, since Travelers is not entitled to exercise an assignment of rents, if Travelers attempts in any way to collect rents directly from tenants of the Mall, it will, among other things, be a tortious interference by Travelers with the Mall and its contractual relations." App. at 291.
 
 
 14
 Travelers responded to this warning by seeking the aforementioned preliminary injunction, but it did not provide the statutorily required notice to tenants. Presumably, Travelers took this action to avoid Westridge's implied threat of suit for tortious interference. At oral argument Westridge asserted that Travelers should simply have sought a declaratory judgment that its assignment of rentals was valid rather than pursuing injunctive relief. Had Westridge not threatened Travelers with a tortious interference suit for its attempts to comply with the statutory notice requirements, we would agree that any doubt Travelers might have about the validity of the assignment should be resolved either by going ahead with the notice or by seeking a declaratory judgment. Under normal circumstances, any doubt Travelers might have would not justify a failure to comply with the statute.[4] Westridge removed this situation from the ordinary, however, by its threat of legal action, and Travelers' subsequent failure to comply with the statutory requirements is therefore excusable.
 
 III
 
 15
 Having found that the 1977 assignment of rentals is valid under Minnesota law and that Travelers' failure to comply with the applicable statutory notice provision is excusable, we affirm the district court's grant of summary judgment to Travelers in all respects.
 
 
 
 [1]
 The district court found the assignment effective on September 20 rather than August 1 because of two amendments that were added to the agreement on September 20. See The Travelers Ins. Co. v. Westridge Mall Co., 826 F.Supp. 289, 293 (D.Minn.1992). There is no dispute that construction had begun by the latter date. Because of the manner in which we resolve the validity of the assignment, see infra, we need not resolve this factual dispute
 
 
 [2]
 Minnesota law provides that an assignment of rentals such as that at issue
 shall operate against and be binding upon the occupiers of the premises from the date of filing by the holder of the assignment in the office of the county recorder or the office of the registrar of titles for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of the notice upon the occupiers of the premises.
 Minn.Stat.Ann. § 559.17, subd. 2(3)(b) (West 1988).
 
 
 [3]
 During oral argument, Westridge conceded that Travelers had complied with the notice provision between the filing of the briefs and the date of oral argument. Westridge's argument is that it is entitled to the rents collected from the date of the preliminary injunction until the date on which Travelers complied with the notice provision, a period of approximately two years
 
 
 [4]
 Westridge places great emphasis on Metropolitan Federal Bank of Iowa v. Brookwood Manor Limited Partnership, No. C1-91-567, 1991 WL 156622 (Minn.Ct.App. Aug. 20, 1991). While we do not find that opinion inconsistent with our holding, we note, as did Travelers in its brief, that citation to this case and others in Westridge's brief is in clear violation of 8th Cir.R. 28A(k), which prohibits citation of "federal or state court opinion[s] not intended for publication, except when the cases are related by identity between the parties or the causes of action."